UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL SHANAHAN, et al.,

    Plaintiffs,

v.                                           Case No. 13-C-1269

THOMAS BUTLER, et al.,

    Defendants.

**DECISION AND ORDER GRANTING MOTION TO DISMISS**

Plaintiffs Daniel Shanahan, Victoria Shanahan, and S.T. Hardware Store, Inc., d/b/a Peaslee Hardware, brought this action for damages they claim they sustained as a result of fraudulent misconduct and mishandling of a Small Business Administration (SBA) loan. The complaint alleges that the loan guaranty was sold by the SBA through its employee and agent, Thomas Butler, to Butler Investments LLC, a company Thomas ran with his brother Kurtis Butler. Butler Investments then overcharged the plaintiffs under a repayment agreement. In addition to the Butlers, Plaintiffs also sued the Administrator of the SBA and Fifth Third Bank, the successor to the Merchants National Bank of Aurora where the loan originated. Plaintiffs allege that had the SBA and Merchants Bank properly processed and credited their original down payment, the loan would not have gone into default, which then triggered the eventual sell-off by the SBA. Federal jurisdiction is asserted under 28 U.S.C. §§ 1346 and 1442 based on the claim against the SBA administrator.

This case is before me on a motion to dismiss by Defendant Fifth Third Bank. It moved for dismissal on January 27, 2014, based on a variety of theories, including the statute of limitations, the voluntary payment doctrine, and a failure to plead sufficient facts to state a plausible claim. Plaintiffs failed to file a response to Fifth Third Bank's motion. Because the time to file such a response has long since passed, the Court will consider the motion fully briefed and decide it on the present record. For the reasons that follow, the motion to dismiss will be granted and all claims against Fifth Third Bank will be dismissed.

## I. BACKGROUND

This case arises out of a SBA loan to S.T. Hardware Store, Inc. d/b/a Peaslee Hardware Store in 1995. According to the complaint, the loan originated from Merchants Bank, which is now part of Fifth Third Bank. Unfortunately, the hardware store, which was located in River Forest, Illinois, failed and the business assets were sold. Plaintiffs Daniel and Victoria Shanahan, who personally guaranteed the loan, entered into a settlement agreement with the SBA—Fifth Third Bank was not a party to the agreement, (Compl. Ex. 3 at 1, ECF No. 12 ("This agreement is between the United States Small Business Administration ("SBA") and Daniel and Victoria Shanahan.")—for the outstanding balance after the proceeds from the sale of the business assets were applied to the loan. The settlement agreement provided for monthly payments of $363.34 for 10 years, with a balloon payment for the remaining balance due in 2007.

In addition to the personal guarantees of Plaintiffs, the loan was secured by a mortgage on Plaintiffs' real property in River Forest, Illinois, and a whole life insurance policy that had a cash value of roughly $10,000 at the time of the liquidation of the business assets. The SBA agreed to

release the mortgage on the River Forest real estate in an amendment to the settlement agreement in exchange for a $10,000 payment and a first mortgage on real estate in Vilas County, Wisconsin, on September 25, 1997. According to the amendment, the $10,000 was to "prepay installment payments." (Compl. Ex. 3 at 7, ECF No. 12.)

It is not entirely clear from the complaint or the documents attached to the complaint, but Plaintiffs failed to make the required installment payments at some point. Plaintiffs allege that they "assumed" that the "cash value in the assigned insurance policy" would act as a "credit against the loan balance." (Compl. ¶¶ 20–21, ECF No. 1.) When Plaintiffs did not receive a notice of default between 1997 and 2005, they "assumed that the insurance policy continued to provide a source for interest payments under the Settlement Agreement." (*Id.* at ¶ 22.) The reasonableness of their assumption is questionable at best, given that eight years of monthly payments is almost $35,000 which is far more than the alleged $10,000 cash value of the life insurance policy. Regardless, Plaintiffs did receive a notice of default from the SBA on August 23, 2005. The notice, authored by Defendant Thomas Butler who was then an SBA employee, informed Plaintiffs that they had failed to make the required monthly interest payments since December 19, 1997. As a result of Plaintiffs' failure to pay, the SBA had exercised its option to cancel the settlement agreement and had reinstated the entire loan balance: "principal in the amount of $85,989.92 with accrued interest of $54,498.76 for a total amount due as of August 23, 2005, of $140,488.84." (Compl. Ex. 4 at 1, ECF No. 13.) According to the complaint, Plaintiffs disputed that the loan was in default and eventually settled with the SBA, through Defendant Butler, for $98,000.

Plaintiffs allege that Defendant Butler breached the new settlement agreement and sold the loan to Butler Investments, LLC, a company owned by Defendant Butler and his family, for

3

$60,000. Butler Investments then demanded the full amount due. Plaintiffs allege that they ultimately paid $161,000 to Butler Investments in order to satisfy the loan and prevent the threatened foreclosure on the real property in Vilas County. As a result, Plaintiffs allege that Fifth Third Bank "received an extra $45,000 in phantom money not part of any loan or consideration paid to Shanahan." (Compl. ¶ 33, ECF No. 1.)

Defendant Butler was later charged with defrauding the SBA. In the plea agreement that Plaintiffs attached to their complaint, Defendant Butler pled guilty to eight counts of wire fraud. Per the plea agreement, Defendant Butler "devised a scheme to sell his family members the loans that still had value for a fraction of the actual value of the loans or their collateral." (Compl. Ex. 5 at 2–3, ECF No. 14.) Defendant Butler then personally profited from the results. Plaintiffs allege, and the plea agreement confirms, that one of the loans Defendant Butler sold as part of this scheme was Plaintiffs' SBA loan.

Plaintiffs filed their complaint on November 11, 2013. The complaint describes a total of eight counts against five defendants. Only four of those claims are against Fifth Third Bank: Count II for "Detrimental Reliance," Count IV for "Breach of Contract re Insurance Collateral," Count V for "Fraud as to unknown $45,000 and Constructive Trust as to Recovery," and Count VIII for "Common Law Fraud." Fifth Third Bank moves to dismiss all four claims.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint by asserting that the plaintiff failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's "complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Although motions to dismiss under Rule 12(b)(6) generally do not address affirmative defenses, "the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). It is appropriate to consider the statute of limitations at this stage if the "relevant dates are set forth unambiguously in the complaint," *id.*, and if the plaintiff effectively "pleads himself out of court" by providing enough facts in his pleading to establish a timing defect in his complaint. *Cancer Foundation v. Cerberus Capital Management*, 559 F.3d 671, 674–75 (7th Cir. 2009).

### III. ANALYSIS

Fifth Third Bank has asserted several grounds for dismissal. Because it is clear that Plaintiffs' claims against Fifth Third Bank are barred by the applicable statutes of limitation under Wisconsin and Illinois state law, the Court will dismiss Counts II, IV, V, and VIII. Accordingly, the Court will not address the merits of Fifth Third Bank's other arguments, like the voluntary payment doctrine, that may be relevant to Plaintiffs' remaining claims against the other defendants in this case.

As a threshold matter, there is the choice-of-law issue identified by Fifth Third Bank's brief. As Fifth Third Bank suggests, it would appear that Illinois law should govern the contract claims, while Wisconsin law applies to the tort claims. Illinois has the most significant relationship with the contract in this case: all of the documents were executed in Illinois, the loan was to an Illinois business, and the performance would occur in Illinois. *See In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009) ("Relevant contacts include: (a) the place of the contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter; and (e) the respective domiciles, places of incorporation and places of business of the parties."). As for the claims that sound in tort, Wisconsin law likely applies because Plaintiffs had moved to Wisconsin when the alleged fraud occurred in 2005. *See State Farm Mut. Auto Ins. Co. v. Gillette*, 2002 WI 31, ¶¶ 50–53, 251 Wis. 2d 561, 641 N.W.3d 662 (2002) (summarizing Wisconsin tort choice of law rules). In any event, whether Wisconsin or Illinois law applies is largely an academic exercise because under either state's law all of Plaintiffs' claims against Fifth Third Bank are time-barred.

### A. Breach of Contract

Under Illinois and Wisconsin law, a breach of contract generally accrues when the breach occurs, not upon discovery. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995) ("[T]he cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages."); *CLL Assoc. Ltd. Partnership v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993) ("[A] contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred."). Assuming that Fifth Third Bank was under a contractual

obligation to apply the cash value of the insurance policy to the settlement agreement, it breached this obligation no later than November 1999 based the alleged facts.

According to the complaint and the attached exhibits, Plaintiffs executed the settlement agreement in 1997, with the first payment due on July 1, 1997. It is not clear from the complaint, however, if this (or any) payment was ever made. If Plaintiffs failed to make the first payment and Fifth Third Bank failed to apply the cash value at that point, then Fifth Third Bank was in breach and the cause of action accrued. But it appears that at least some payments were made, as the SBA's notice of default identified Plaintiffs' failure to pay the installments as starting in December 1997.

The most favorable inference for Plaintiffs is that the breach occurred in November 1999, when the $10,000 payment that was part of the amendment to the settlement agreement ran out. Although there is no allegation that Plaintiffs made this $10,000 payment, it would have covered approximately 28 payments, until November 1999, assuming it was made. Assuming the facts as alleged in the complaint to be true and construing them most favorably to Plaintiffs, Fifth Third Bank's alleged breach occurred by the end of 1999.

In Illinois, the limitations period for breach of contract actions is ten years. 735 Ill. Comp. Stat. 5/13-206. It is just six years in Wisconsin. Wis. Stat. § 893.43. Consequently, if Fifth Third Bank breached its contractual obligation in November or December 1999, the limitations period ran no later than December 2009, almost four years before Plaintiffs' filed this action.

Finally, I do note that the discovery rule can delay the commencement of the statute of limitations to causes of action for breach of contract in Illinois on a "case-by-case basis."

7

*Hermitage Corp.*, 166 Ill. 2d at 78.[1] The burden of proving the date of discovery, however, lies with the plaintiff. *Id.* at 85–86. Plaintiffs have failed to provide any response to Fifth Third Bank's motion and therefore necessarily fail to meet their burden. Nor can the Court come up with a colorable argument that Plaintiffs should not have reasonably known that Fifth Third Bank was in breach until November 2003 in order to make this claim timely under Illinois law. Even if Plaintiffs' assumption that Fifth Third Bank applied the roughly $10,000 cash value of the insurance policy to the settlement agreement balance was a reasonable one and might delay commencement of the statute of limitations, it would only do so for approximately 28 more months when the cash value would run out. Under this assumption, the discovery date at which time the action would accrue would arguably be around February/March 2002. Accordingly, having considered the facts alleged in the complaint and accompanying exhibits to be true, making all inferences in favor of Plaintiffs, and providing the most favorable application of the law, Plaintiffs' breach of contract claim is still approximately one and a half years late.

### B. Detrimental Reliance

Detrimental reliance is not a cause of action in Illinois or Wisconsin. The Court assumes, as did Fifth Third Bank, that Plaintiffs intended to allege a cause of action for promissory estoppel. In Illinois, a five-year limitation period applies to claims for promissory estoppel. 735 Ill. Comp.

---

[1] Wisconsin courts, conversely, refuse to apply the discovery rule to contract claims at all. *CLL Associates*, 174 Wis. 2d at 618; *see also Aslani v. Country Creek Homes, Inc.*, 2008 WI App 36, ¶ 11, 308 Wis. 2d 395, 746 N.W.2d 605 ("For a century, our supreme court has held that a breach of contract claim accrues at the time of the breach, even if the defect is latent and even if the party may not have known of its existence.") (collecting cases).

Stat. 5/13-205. The limitation period in Wisconsin for quasi-contract claims, like promissory estoppel, is six years. *Boldt v. State*, 101 Wis. 2d 566, 578, 305 N.W.2d 133 (1981) (discussing Wis. Stat. § 893.19(3) (1977), which is now Wis. Stat. § 893.43). The basis for the promissory estoppel claim appears to be that Plaintiffs assumed that the life insurance policy pledged as collateral to the loan "continued to provide a source for interest payments under the Settlement Agreement." (Compl. ¶ 22, ECF No. 1.)

As with the contract claim, there are a variety of possible dates that might constitute the date this action accrued. But as already explained above at length, Plaintiffs' promissory estoppel claim accrued no later than February or March 2002. At that point, Plaintiff knew or reasonably should have known all of the relevant events and facts that formed the basis for the cause of action. Therefore, the statute of limitations ran on their claim for promissory estoppel in 2007 in Illinois and in 2008 in Wisconsin.

### C. Fraud

Plaintiffs have two claims for fraud against Fifth Third Bank—Counts V and VIII. The counts appear to allege slightly different theories. Count V alleges that Fifth Third Bank fraudulently "added the principal amount of $45,000 to the loan balance without consideration" in 2005, which was later paid by Plaintiffs. (Compl. ¶¶ 80–84, ECF No. 1.) In Count VIII, which Plaintiffs call "common law fraud," they allege that "material misrepresentations" and "intentional acts of deception" by Fifth Third Bank demonstrate an intent to deceive and reasonable reliance by Plaintiffs. (*Id.* at ¶¶ 103–05.) Although based on slightly different theories, it is clear from the

9

factual allegations in the complaint and the exhibits attached to the complaint that Plaintiffs' fraud claims accrued no later than October 2005.

As Plaintiffs' allege in their complaint, they did not believe that they owed the additional $45,000 when they received the notice of default from the SBA in August 2005. (*Id.* at ¶ 28.) Further, Plaintiffs' allege that the SBA, through Defendant Butler, agreed to settle the amount owed for $98,000 but then breached the agreement by selling the loan to Butler Investments, LLC. (*Id.* at ¶ 29.) Although the complaint does not allege when Defendant Butler notified Plaintiffs of the sale of their loan, Plaintiffs attached a copy of a letter from Defendant Butler to Plaintiffs dated October 4, 2005, notifying them of the sale to Butler Investments. (Compl. Ex. 4 at 3, ECF No. 13.) Thus, Plaintiffs knew or should have known of the facts that formed the basis of their fraud claims by October 2005 because the letters from the SBA provided express notice of the alleged fraudulent addition of the $45,000 and the underlying "material misrepresentations" that Plaintiffs attribute to Fifth Third Bank. Because the statute of limitations for fraud in Wisconsin is six years, Wis. Stat. § 893.93(1)(b), and five years in Illinois, 735 Ill. Comp. Stat. 5/13-205, Plaintiffs' claims for fraud are time-barred.

## IV. CONCLUSION

When courts dismiss claims pursuant to Rule 12(b)(6), they ordinarily give the plaintiff an opportunity to amend the complaint to correct the problem. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Foster v. DeLuca*, 545 F.3d 582, 584–85 (7th Cir. 2008)). However, leave to amend need not be granted if it is clear that any amendment would be futile. *Garcia v. City of Chicago*, 24 F.3d

966, 970 (7th Cir. 1994). Here, any amendment would be futile as there is no set of facts in which Plaintiffs' claims against Fifth Third Bank would not be untimely by more than a year, as indicated by Plaintiffs' failure to file any responsive pleading.

Accordingly, Defendant Fifth Third Bank's motion to dismiss (ECF [23]) is **GRANTED**. Plaintiffs' claims against Fifth Third Bank—Counts II, IV, V, and VIII—are **DISMISSED** with prejudice.

Dated this   2nd    day of April, 2014.

   s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court